IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN O. DAVENPORT,

      **Plaintiff,**

vs.                                                              Civil No. 04-1341 RLP

JO ANNE B. BARNHART,
Commissioner of Social Security,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

      Plaintiff, Stephen O. Davenport ("Plaintiff" herein) filed an application for Disability Income benefits on February 24, 2003. The application was denied at the first and second levels of administrative review. An Administrative Law Judge ("ALJ" herein) conducted a hearing on March 16, 2004, and denied Plaintiff's claim on April 7, 2004. On November 12, 2004, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security.

      The matter before the court on Plaintiff's motion to reverse or remand the administrative denial of his claim.

**II.**       **Background**

      Plaintiff was born in 1948. He is a Vietnam veteran who alleges disability caused by Post Traumatic Stress Disorder ("PTSD" herein). (Tr. 63, 121). Plaintiff served as an Army infantryman in Vietnam from 1967-1969. During his tour of duty he was engaged in numerous combat situations

and sustained serious injuries.[1]  In June 1969, he reported suffering from nightmares and depression. (Tr. 195).  That same year Plaintiff was awarded 20% disability benefits from the VA for service related injuries to his hand and arm.  (Tr. 193).  This award was subsequently increased to 30% in 1978 following consideration of a combat related hearing impairment.  (Tr. 95-96).  After returning from Vietnam Plaintiff attended four years of college and chef school, and worked as a chef and construction worker. (Tr. 63, 141, 182, 185).  Plaintiff alleges that he became disabled from PTSD on May 1, 1994.  He has no record of earnings after 1994[2], although he admits to working on construction projects from 1999-2003 (Tr.203, 205) and caring for a elderly friend in exchange for rent from 1993-2003.[3]  (Tr. 205, 207).  He spends his time skiing, riding his motor cycle and reading. (Tr. 185).

Plaintiff first sought mental health treatment on June 27, 2001. (Tr. 65, 176-183).  He was evaluated by Ferrell Udell, a licensed social worker at the Veterans Center-Santa Fe.  Mr. Udell noted Plaintiff's complaints of intrusive thoughts, recurring dreams, self medication through alcohol use, anxiety and periodic depression.  Plaintiff described traumatic events from his tour in Viet Nam and his history following military service, which included bouncing from job to job, social isolation, anger and substance use.  Mr. Udell diagnosed PTSD, chronic-ongoing[4].

In June 2001, Plaintiff sought an increase in his military disability pension related to PTSD.

---

[1] Veterans' Administration records indicate that Plaintiff suffered gunshot and shrapnel wounds to his left shoulder and hand, hemopneumothorax, and tinnitus.  (Tr. 95-96, 193, 181).

[2] Plaintiff's earning prior to 1994 were modest to minimal.  (Tr. 58-59).

[3] Plaintiff testified that he fed his friend, took care household repairs, did the laundry and grocery shopping, and drove him occasionally to appointments.  (Tr. 205-207).

[4] The term chronic indicates that the duration of symptoms is three months or longer.  Diagnostic and Statistical Manual of Mental Disorders, 4th ed., (DSM-IV-TR) p. 468.

(Tr. 135). He was evaluated by Cheryl Greene, a medical or mental health provider with the Veterans' Administration. (184-186). Cheryl Greene took a detailed history[5] and conducted a mental status examination. She diagnosed PTSD, chronic, with sleep disturbance, temper problems and social isolation. The following month Plaintiff was evaluated by Robert Hillman, M.D. (Tr. 140-142). Dr. Hillman noted the traumatic events from Plaintiff's military service. With regard to symptoms of PTSD, Dr. Hillman indicated that Plaintiff had experienced nightmares and social isolation since returning from combat. Dr. Hillman conducted a mental status exam which was normal with the exception of moderate depression. He diagnosed PTSD, severe and chronic. He recommended psychotherapy. Plaintiff did not follow up with recommendations that he receive counseling (Tr. 210).[6]

The VA awarded Plaintiff an increase in service connected disability in October 2001, finding that he was entitled to a 50% rating as of July 3, 2001 (the date his claim was stamped by the VA) for PTSD, which was added to his previous 30% rating for physical disabilities.

Plaintiff appealed the PTSD rating, seeking a higher rating. The VA conducted a hearing on the appeal on March 29, 2002. (Tr. 135-137). In connection with that hearing Mr. Udell, submitted an undated letter stating that Plaintiff had experienced a "extreme exacerbation of his PTSD symptoms." Mr. Udell also opined that Plaintiff had been chronically underemployed by virtue of his hostility toward authority, had had more then 40 jobs in 34 years, had lived a very isolated life had

---

[5]Dr. Greene's history noted that Plaintiff complained of combat related nightmares which varied in frequency, but had been ongoing for many years; combat flashbacks, anger management problems, few close friends. He denied anxiety, panic attacks, crying or shaky spells. (Tr. 184-185).

[6]Plaintiff testified that the drive from his home to the Vet Center was too far to go for counseling. (Tr. 210). No records reflecting counseling for PTSD are contained in the Administrative Record.

used alcohol and marijuana to self-medicate for anxiety and nervousness. In a decision dated April 15, 2002, the Veterans' Administration revised Plaintiff's service related disability for PTSD upward to 70%, based on medical evidence of impaired impulse control, difficulty adapting to stressful circumstances and an inability to establish and maintain effective relationships. (Tr. 122).

Plaintiff filed an application for Social Security Disability benefits ten months later, in February, 2003, stating that he had been unable to work since May 1, 1994, due to symptoms of PTSD, including inability to focus, concentrate, complete job tasks, work with people and relate to his boss.[7] (Tr. 55, 63). His application was denied at the first and second levels of administrative review.

At his hearing, Plaintiff testified that before 1994 he had occasional problems with employers, but couldn't remember specifics, however in general, he had "problems with being told what to do." He recalled being fired from one job after slapping a waiter, but didn't provide a date for this incident. He stated he left other jobs between 1969 and 1994 because of conflict, but didn't have problems getting along with co-workers or interacting in groups. He described himself as a loner who didn't like to take direction. Since 1969 he has had recurring dreams related to Vietnam, occasional flashbacks triggered by sounds like helicopters, and has had difficulties with concentration and memory. He explained that he had delayed seeking help for these problems because early on the VA had been openly hostile to Vietnam veterans. (Tr. 208-209, 211-212, 214-214, 217, 219, 221). He wasn't sure why he chose May 1, 1994, but perhaps it was because the job ended because of winter. (Tr. 211).

---

[7]Plaintiff also submitted a questionnaire filled out my Mr. Udell to support his application. Mr. Udell qualified all the answers contained therein, stating that his description of Plaintiff's condition applied as of May 2001. (Tr. 134).

## II.     The Decision of the ALJ

The ALJ denied Plaintiff's claims at step two of the sequential evaluation process, stating:

 Claimant has failed, however, based upon the objective evidence of record to establish the existence of a severe impairment prior to the expiration of his date last insured (i.e., December 31, 1997) as is his burden pursuant to the Social Security Act and Regulations. . . .
 Claimant . . has alleged disabling post-traumatic stress disorder dating back to May 1, 1994 attributed to his experience in Vietnam. There is no medical evidence covering the period from May 1, 1994 through December 31, 1997 to support his claims. The VA did eventually diagnose post-traumatic stress disorder, but that was not until September 4, 2001. . . During the period prior to the VA diagnosis of post-traumatic stress disorder (1994-2001), claimant was not hospitalized nor did he seek assistance from the VA. During this time, claimant also took care of an elderly friend. Claimant was fired from one job before his alleged onset date; however, he has taken no prescription drugs for post-traumatic stress disorder and he has attended no counseling although he is (and has been) eligible for VA medical care.
 By his own testimony, claimant's activities of daily living are unimpaired, as he related that he goes snow skiing and rides motorcycles. Claimant related no trouble with co workers but admitted that he didn't like authority figures and did not speak to the New Mexico police.
 When questioned about trouble adjusting after Vietnam, claimant said that he had trouble relating to civilians. Specifically, he explained that he avoided telling civilians that he had been in Vietnam because of he (sic) perceived that they held negative opinions of veterans. In his brief, claimant's attorney asked for a consultative psychiatric/psychological examination. However the undersigned finds that the evidence does not warrant an examination to determine claimant's limitations more than six years ago, especially in light of claimant's complete lack of effort during that period to obtain medical care.
 . . .(S)tate agency medical consultants . . .(in) May of 2003 found insufficient evidence to evaluate functional limitations prior to the expiration of claimant's date last insured. . . In accordance with Social Security Ruling 96-6p, the undersigned as considered the administrative findings made by the state agency and finds that the state agency's assessment is consistent with the objective evidence (or lack therof) as a whole.
 Given all of the evidence, the undersigned finds that before December 31, 1997, claimant's impairment was not severe as it is only a slight abnormality which has had such a minimal effect on the claimant that it would not be expected to interfere with his ability to work, irrespective of age, education, or work experience . . .Therefore, the undersigned finds that the claimant was not under a disability as

5

defined in the social security act, at any time through the date of this decision.[8]

(Tr. 20).

### III. Scope of Review

I review the ALJ's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994).

### V. Discussion.

Plaintiff did not seek medical treatment for PTSD prior to 2001. No medical records exist for the time period between plaintiff's alleged onset date of disability, May 1, 1994, and the date his insured status expired on December 31, 1997. As a result, plaintiff cannot produce any contemporaneous clinical findings that he suffered from PTSD during this time period. There is, however, uncontroverted evidence that Plaintiff has suffered from "severe" PTSD at least as of 2001. Plaintiff contends that the ALJ failed to follow the requirements Security Ruling 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249[9] which permits a claimant to establish when a disability started even in the absence of contemporary medical evidence.

The introduction to SSR 83-20 explains that the determination of the onset date is critical because "it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." S.S.R. 83-20. This language

---

[8]The ALJ's statement that he found no disability "though the date of this decision" is apparently a misstatement. He previously stated that the period relevant to his decision was May 1, 1994 through December 31, 1997.

[9] Social Security Rulings are binding on the Commissioner, see Heckler v. Edwards, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984)

plainly indicates the ruling is intended to apply to cases such as the one at bar. S.S.R. 83-20 provides that when contemporaneous medical evidence is not available, it may be necessary to infer the date of onset from medical and other evidence:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. *How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. <u>This judgment, however, must have a legitimate medical basis.</u> At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. . .*

(emphasis added).

Plaintiff requested a consultative evaluation to assist in determining date of onset of disability. (Tr. 93-94). The ALJ refused this request, and relied instead on the evaluation of state agency examiners. Those evaluations, however, are inadequate to support any finding regarding date of onset. They consist of signed Disability Determination and Transmittal forms which contain no evaluation of the evidence, and a letter signed by the Regional Commissioner stating although medical evidence established that Plaintiff currently suffered from PSTD, that evidence could not be considered since it post-dated the date he was last insured. (Tr. 23-26). The ALJ made no attempt to comply with S.S.R. 83-20.

The medical records indicate that symptoms attributable to PTSD were present prior to the date Plaintiff was last insured. Because this case was decided at step two of the sequential evaluation process, the issue is whether those records combined with evaluation by a medical advisor would indicate when the symptoms became "severe," that is, when, if ever, they significantly limited

Plaintiff's ability to do basic work activities[10]. 20 C.F.R. 404.1521(b). That analysis is simply missing.

I find that the ALJ failed to apply correct legal principles in evaluating Plaintiff's claim. On remand, the Commissioner will comply with the provisions of S.S.R. 83-20, utilizing the services of a medical advisor to determine from the medical and other evidence, when, if ever during the relevant period, Plaintiff suffered a "severe" impairment by reason of post-traumatic stress disorder. If so, evaluation of Plaintiff's claims will continue though the remaining steps of the sequential evaluation process. If a severe impairment during the time under consideration is not found, the evaluation will cease and Plaintiff's claim will be denied. In remanding the case, the court does not intend to dictate any result. The court requires only that the correct legal standards are invoked in reaching a decision based on the facts of this case." Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

_____
RICHARD L. PUGLISI
United States Magistrate Judge
(sitting by designation)

---

[10]The ALJ must apply a de minimus standard to determine whether an impairment significantly limits the claimant's ability to do basic work activity. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.1988); Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997); §20 C.F.R. 404.1520(c).